IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

WILLIAM R. MARSHALL,   Case No.: 25-cr-63-wmc

Defendant.

GOVERNMENT BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS STATEMENT

I. INTRODUCTION

The defendant moves to suppress his custodial statements arguing that agents committed a *Seibert* violation when they engaged in a conversation with him prior to advising him of his *Miranda* rights[1],[2] Respectfully, the Government disagrees that this is a *Seibert* issue at all.

A defendant's rights are violated under *Seibert* if law enforcement deliberately use a "two-step interrogation" strategy, whereby law enforcement withhold Miranda rights to obtain a confession during police interrogation, and then give the *Miranda* warning to obtain a repetition of the same confession. *See Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643. For the following reasons, the facts demonstrate that prior to the *Miranda* advisement, the defendant was not subject to express

---

[1] *See, Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] The Defendant does not challenge that the post-*Miranda* statement was involuntary. The Government understands any challenge to that point as waived.

1

questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *see also id.* at 301, 100 S.Ct. 1682; see also *United States v. Lee,* 618 F.3d 667 (7th Cir.2010).

Because the agents did not interrogate the defendant prior to giving *Miranda* advisements in this case; no *Seibert* violation occurred, and the defendants motion should be denied.

## II.   BACKGROUND

The defendant was arrested on March 14, 2025, in Rock County, Wisconsin, for his role in a prominent drug trafficking organization (the Purnell DTO). When he was arrested, law enforcement found over 2,000 grams of methamphetamine and 400 grams of fentanyl in his vehicle. The defendant had been identified as a drug courier for the Purnell DTO. The investigation revealed that the defendant has been picking up drugs from a Purnell DTO stash house in Chicago and transporting it to Madison to deliver it to distributors. Prior to the defendant's arrest, law enforcement conducted wiretaps, surveillance, seizures, controlled buys, interviews, and location tracking- including the defendant's vehicle.

On March 18, Wisconsin Department of Justice- Division of Criminal Investigation Special Agents Kyle Dilley and Ryan Volenberg interviewed the defendant at the Rock County Sheriff's Office jail. The total meeting lasted approximately 1 hour and 37 minutes.[3] (*See* Def. Ex. D.)

---

[3] The defendant enters the room 1 minute into the recording.

2

The agents begin speaking with the defendant when he enters the room. The agents speak to the defendant for approximately 13 and a half minutes before they initiate giving *Miranda* warnings[4]. (*See* Def. Ex. D.) The agents then explained that they were going to give him the *Miranda* advisements ("we gotta (sic) ask you some questions before we ask you some questions. We gotta (sic) read this to you") and told him that he has the choice to not to answer questions. *See Id*. at 14:25-15:00.   The defendant was then given the Miranda advisements, (*Id*. at 15:19.) and the first and only interrogation began.

### III.   ARGUMENT

The defendant's statements are admissible because the agents did not interrogate him prior to advising him of his *Miranda* rights. There is no argument that the defendant was in custody when the interview started. But the need to advise a suspect of *Miranda* does not trigger solely because they are in custody. Instead, *Miranda* rights are not required until officers begin an interrogation[5]. Volunteered statements are admissible even absent *Miranda*. *Miranda*, 384 U.S. at 478.

### A. Agents Dilley and Volenbergs' Communication Pre-*Miranda* Warnings do not Constitute an Interrogation.

As previously stated, the conversation pre-*Miranda* was not an interrogation, and thus the agents did not have an obligation to advise warnings at that time. "*Miranda* rights come into play when a person is in custody and subject to express questioning, or

---

[4] The introduction to Miranda warnings began 14 minutes and 25 seconds into the recording.
[5] Before "*Miranda* warnings are required, however, the suspect must be both 'in custody' and subjected to 'interrogation.'" *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007) (quoting *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006)) (cleaned up).

its functional equivalent. *Innis,* 446 U.S. at 301 ("The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.")." *United States v. Lee,* 618 F.3d at 677.

In his brief, the defendant argues that the agents' describing the evidence against the defendant and mentioning his sentencing exposure "were 'reasonably likely to elicit an incriminating response.'" Dkt. 259 at 9. On the contrary, reciting evidence and potential penalties do not amount to express questioning or words or actions that are reasonably likely to elicit an incriminating response under current case law, as explained below.

### 1. Law Enforcement can Explain the Evidence Against a Suspect and Potential Consequences of Charges without *Miranda* Advisements.

Merely reciting the evidence against a suspect is not the functional equivalent of an interrogation.[6] Even if its weight might move a suspect to speak. *See Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006).

In *United States v. Payne*, the Fourth Circuit concluded that statements by law enforcement officials to a suspect regarding the nature of the evidence against the

---

[6] *See, e.g., United States v. Vallar,* 635 F.3d 271, 285 (7th Cir.2011) ("Merely apprising *Vallar* of the evidence against him by playing tapes implicating him in the conspiracy did not constitute interrogation."); *Easley v. Frey,* 433 F.3d 969, 974 (7th Cir. 2006) (advising a suspect of witness testimony implicating him in a crime that could subject him to the death penalty was not interrogation); *United States v. Sutton,* 77 Fed.Appx. 892, 895 (7th Cir.2003) (nonprecedential) (officer's statement to defendant that he found marijuana and a gun on the defendant's property was not an interrogation, and defendant's interjection that the items belonged to him and not his sons was an admissible, volunteered statement). *United States v. Johnson*, 680 F.3d 966, 977 (7th Cir. 2012), overruled by *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).

4

suspect do not constitute interrogation as a matter of law. 954 F. 2d 199, 203 (4th Cir. 1992). The Seventh Circuit has cited *Payne*'s reasoning approvingly in several of its own decisions. *See Easley*, 433 F.3d at 974, *United States v. Jackson,* 189 F.3d 502, 510 (7th Cir.1999), and *United States v. Cooper,* 19 F.3d 1154, 1163 (7th Cir.1994).

In the same decision, the Seventh Circuit found that informing a defendant of possible consequences of charges they face does not amount to interrogation. *See Easley*, 433 F.3d at 974 ("we do not believe that Long's statement regarding the evidence and the possible consequences of the charges Easley faced rose to the level of interrogation under existing United States Supreme Court precedent."). The Court has echoed that this practice by law enforcement can be beneficial, because "information about the evidence against a suspect may also contribute to the intelligent exercise of his judgment regarding what course of conduct to follow." *Payne*, 954 F.2d at 202; (citation omitted).

This is precisely what Agents Dilley and Volenberg did. Even the defendant in his motion describes Agent Volenberg's communication with the defendant at one point as "monolog[ing]…the mountains of evidence law enforcement has collected on [the defendant] and his role in a multi-state drug conspiracy." (Dkt. 259 at 4.) The agents gave the defendant an overview of the evidence gathered from their investigation that involved his conduct as well as the picture, and their opinions, on the larger conspiracy.

During the agents' explanation of the evidence, the defendant interjected numerous times with voluntary admissions. The Fifth Amendment does not bar volunteered statements of any kind. *Miranda*, 384 U.S. at 478. Thus, if a defendant

5

makes a statement in response to words or actions by officers that do not constitute interrogation, or if he initiates communications, the law does not prohibit the officers from listening to his voluntary statement. *United States v. Jones*, 600 F.3d 847, 855 (7th Cir. 2010). In this instance, the defendant's pre-*Miranda* statements regarding his involvement with the drug trafficking conspiracy were volunteered.

### 2. The Pre-*Miranda* Conversation in the Instant Case is Distinguishable from Examples where the Seventh Circuit Applied a *Seibert* Analysis.

The Seventh Circuit has interpreted the plurality opinion as well as Justice Kennedy's concurrence in *Miranda v. Seibert* to prohibit the two-step interrogation strategy unless curative measures are taken before the post-warning statement is made. *United States v. Stewart*, 536 F.3d 714, 722 (7th Cir. 2008) *citing Seibert*, 542 U.S. at 622. For this analysis to be necessary, the first interaction must be an interrogation. There are critical differences between the pre-*Miranda* interactions in the cases where the Seventh Circuit engaged in this analysis and what occurred in this case.

First, in *Stewart*, after a bank robbery was committed, Detectives identified Stewart as their suspect, handcuffed him, placed him in their squad car, and drove him to the police station downtown. *Stewart*, 536 F.3d at 717 (7th Cir. 2008). During the short trip to the station, a detective asked Stewart if he was the bank robber, and Stewart denied any involvement. *Id*. Stewart was not given *Miranda* warnings at this time, although the parties agreed in the initial appeal of this case that he was now in custody. *Id*. At the station, the detective placed Stewart in an interview room, and again asked if he was involved in the robbery. *Id*. Stewart told them that another man, committed the

robbery and that he (Stewart) provided him with the gun and car. *Id*. The detective left the room and returned with two FBI agents. *Id*. The detective asked Stewart again if he committed the robbery. *Id*. Stewart admitted to doing so and said he did it alone. *Id*. At that point, the detective administered *Miranda* warnings and Stewart signed a *Miranda* waiver. Stewart then gave a detailed videotaped confession.

There was no argument that the detective interrogated Stewart before giving him *Miranda* advisements. The detective directly asked if he had committed the robbery. This was clearly a statement governed by the *Miranda* and *Innis* definitions of interrogation as its sole purpose was to elicit an incriminating response. Because the first confession was a result of an unprotected interrogation, the Court had to evaluate the admissibility of the confessions obtained in both interrogations in accordance with *Seibert*.

Following suit, in *United States v. Heron*, after an arrest for trafficking drugs, Heron was interrogated by law enforcement at his own request and gave incriminating statements. 564 F.3d 879, 882 (7th Cir. 2009). Heron was not given *Miranda* warnings before this initial interrogation. The next day, Heron was interrogated again and administered *Miranda* warnings. *Id*. During the second session, Heron said essentially the same thing as he had the previous day. *Id*. Again, the Court engaged in a *Seibert* analysis as it was undisputed that both interviews were interrogations.

Because the initial interview between Agents Dilley and Volenberg and the defendant was not an interrogation, the defendant does not have a *Seibert* claim.

7

## IV.   CONCLUSION

For these reasons, the Court should deny the defendant's motion to suppress.

Dated this 11th day of March, 2026

                                        Respectfully submitted,

                                        CHADWICK M. ELGERSMA
                                        United States Attorney

                                        By: /s/ _____
                                        KATHRYN GINSBERG
                                        STEVEN P. ANDERSON
                                        Assistant United States Attorneys