IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

JAMAR M. PURNELL,                                Case No. 25-cr-63-wmc

Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

INTRODUCTION

The government submits this memorandum to aid the Court in the sentencing of

defendant, Jamar M. Purnell, which is currently scheduled for May 21, 2026.  As

detailed below, Purnell was a leader of an extensive drug trafficking organization that

was involved in the distribution of significant quantities of methamphetamine,

heroin/fentanyl, and cocaine. A loaded handgun with Purnell's DNA on it was found

at a drug trafficking premise he used. For the reasons stated below, the government

asks this Court to impose a total sentence of 20 years in prison. This recommendation is

well below Purnell's advisory guideline imprisonment range.

FACTS[1]

In early 2024, law enforcement officers began investigating members of a drug

trafficking organization (Purnell DTO) operating in Dane County and led locally by

---

[1] The facts underlying the offense in this case are accurately detailed in the Presentence Investigation Report ("PSR") (Dkt. 379).

Jamar Purnell. (PSR ¶¶41-45.) The investigation involved many controlled buys of significant quantities of narcotics by members of the Purnell DTO, Title III wiretaps on phones of members including Purnell, surveillance (physical and GPS), interviews, and warranted searches of residences and vehicles. (PSR ¶45.)

During the course of the investigation, officers identified members of the DTO and their roles. Jamar Purnell acted as the leader and organizer of the DTO, along with his half-brother, Yasir Stackhouse. (PSR ¶25.) Purnell coordinated the distribution and transportation of methamphetamine and heroin/fentanyl from Arizona and Chicago to Madison. (Id.) In many of the controlled buys, Purnell would be the person to originally set the terms for the drug deal and would often send a distributor to complete the transaction. (Id.) Purnell would also complete deals by himself at times. Purnell has been involved in drug trafficking for a long time. For example, one individual reported purchasing heroin and cocaine from Purnell and associates for fifteen years. (PSR ¶80.)

The scale of the operation was significant. The controlled buys in the investigation generally involved 1 pound of methamphetamine on each occasion. When Purnell's stash house was searched early on in the investigation, officers found 10,720 grams of methamphetamine, 166 grams of fentanyl, 10 pounds of marijuana, drug trafficking paraphernalia, and a loaded handgun (with Purnell's DNA on it). (PSR ¶53.) Purnell's drug courier (and father), William Marshall, took regularly trips from Chicago to Madison, bringing large quantities of narcotics to the distributors there. From the relatively short period that investigators were monitoring the wiretaps, they estimate

approximately 10,839 grams of methamphetamine and 1,699 grams of fentanyl were distributed by members of the Purnell DTO. (PSR ¶150.)

In addition to the significant quantities of narcotics distributed by the DTO, many members, in addition to Purnell, were possessed firearms. Dajuea Purnell, Jimmie Leuaxay, and Keean Moore Jr were all found to possess firearms (as felons). (PSR ¶¶66, 133, 144.) Keean Moore was found in possession of ammunition. (PSR ¶137.)

During the course of the investigation, there were many occasions where Purnell's primary distributor was arrested. Purnell would then quickly replace this individual with a new distributor to keep the DTO operating smoothly. At the start of the investigation, Shavarim Wicks was operating as Purnell's primary distributor. (PSR ¶27.) After Wicks' arrest, Purnell installed his son, Dajuea Purnell, as his primary distributor. (PSR ¶28.) After Dajuea's arrest, Purnell had Jimmie Leuaxay and Keean Moore take over as his primary distributors. (PSR ¶¶29-30.)

Purnell also involved many of his family members in his DTO. His brother, Yasir Stackhouse, was involved with much of the operation in Illinois. (PSR ¶26.) His father, William Marshall, operated as the courier for the DTO, bringing drugs from Chicago to Madison. (PSR ¶32.) As noted above, his son, Dajuea Purnell, was installed as a primary distributor until his arrest. (PSR ¶28.)

During all relevant times in this investigation, Jamar Purnell was on supervision out of Georgia for a prior drug trafficking conviction. (PSR ¶181.)

3

<u>GUIDELINES</u>

The PSR determined that Purnell had a total offense level of 43 and a criminal history category of III.  (PSR ¶¶168, 185.)  The resulting guideline imprisonment range on Count 1 is life in prison.  (PSR ¶224.) Purnell faces a 10-year mandatory minimum requirement on Count 1 due to drug quantity involved. (PSR ¶223.) He also faces a 5-year consecutive mandatory minimum sentence on Count 7. (PSR ¶224.) The government agrees this is the correct guideline analysis.

Finally, this Court has the discretion to run this federal sentence consecutively to or concurrently with any sentence imposed in Purnell's George case, Gwinnett County Case No. 09-B-01058-10, that is currently in warrant status. (PSR ¶225.)

<u>ARGUMENT</u>

Given the nature of Purnell's current offenses, the circumstances under which he committed them, and his background, the government respectfully requests that this Court impose a sentence of to impose a total sentence of 20 years in prison. This recommendation is well below Purnell's advisory guideline imprisonment range.

A.   <u>Nature, Circumstances, and Seriousness of the Offense</u>

Jamar Purnell was a leader of a drug trafficking organization that moved incredible quantities of methamphetamine, heroin/fentanyl, and cocaine. It was a large DTO, as exemplified by the nineteen other individuals federally indicted connected to

Purnell's group.[2] Purnell's relevant conduct includes over 18 kilograms of methamphetamine and over 1800 grams of fentanyl plus an additional 10 kilograms of methamphetamine and 1,699 grams of fentanyl from intercepted wiretap communications. These drug numbers are a highly conservative number given that Purnell has been trafficking methamphetamine, fentanyl, and other drugs for many years. In addition to the drug trafficking, Purnell possessed a loaded handgun in a drug house along with 10 kilograms of methamphetamine and 166 grams of fentanyl. At the time Purnell was operating this extensive drug trafficking organization and possessing a firearm, he was on state supervision out of Georgia for a drug trafficking offense a very serious shooting case that resulted in a prison sentence.

There are many factors that standing alone would make this a very serious case: the types (methamphetamine, fentanyl, cocaine) and quantity (kilograms) of drugs involved in this case, Purnell's leadership role in the drug trafficking organization, his possession of a loaded firearm, and his being on supervision for a case involving a drug trafficking. When combined together, Purnell's conduct and characteristics are some of the most serious seen in this district. There is no debate that if the methamphetamine, fentanyl, and cocaine seized had instead been distributed, it would have caused a great deal of harm to communities in the Madison area. Unfortunately, huge quantities of

---

[2] In addition to the fifteen co-defendants in the second superseding indictment, three additional cases are connected to the Purnell DTO: *USA v. Noah A. Hodges* (25-cr-87-wmc), *USA v. Andre B. Morriss* (25-cr-106-wmc), and *USA v. Brittany G. Bobzien and Taylor A. Kilbey* (25-cr-135-wmc).

those drugs had already been distributed into communities over time by Purnell and his associates.

      B.      <u>The History and Characteristics of the Defendant</u>

Jamar Purnell's involvement in the criminal justice system (committing new crimes, in prison, or on supervision) has been consistent from age 18 to the present, age 49. He has ten total criminal convictions, including eight felonies. The most aggravating aspect of Purnell's criminal history is his many prior convictions involving drug trafficking. In 1998, he was convicted of Possess with Intent to Deliver Cocaine (5 grams or less) and sentenced to 3 years in state prison. (PSR ¶178.) In 2006, he was convicted of Possession with Intent to Deliver Cocaine (More than 40 grams) and sentenced to 3 years in state prison. (PSR ¶179.) In 2011, Purnell was convicted of Possession of Cocaine with Intent to Distribute and Possession of Marijuana with Intent to Distribute and was sentenced to 7 years in state prison (in Georgia) followed by 13 years of probation. (PSR ¶181.) This supervision was revoked once in 2018 and he remained on supervision in that case while running the drug trafficking organization in the present case. (Id.) In 2016, Purnell was convicted of Unlawful Possession of Cannabis (2,000-5,000 grams) in Illinois. (PSR ¶183.)

In addition to drug trafficking, Purnell has a prior conviction for Armed Robbery in 1998 that involved him pulling a gun on a clerk at a convenience store. (PSR ¶176.) He also has a conviction for Possession of Marijuana by an Inmate when he possessed marijuana at a detention center in Georgia. (PSR ¶182.)

Purnell has been provided many opportunities for lesser sentences – probation, shorter jail sentences, and prison sentences of various lengths. He has been sentenced to prison on five separate criminal cases and has served four separate stints in prison. (PSR ¶¶176, 178, 179, 181, 182.) Purnell's supervision has been revoked multiple times in the past. (PSR ¶176, 181.) He has failed to take advantage of those opportunities, and has engaged in increasingly serious conduct, and has shown no willingness or ability to follow the law.

Purnell is not an addict. (PSR ¶¶211-214.) He has held self-employed jobs for many years. (PSR ¶¶217-219.) While these are positives, they show that Purnell was involved in this massive drug enterprise solely for profit.

C.      The Need for a Sentence which Promotes Respect for the Law and Provides Just Punishment

The primary goals of sentencing in this case are incapacitation and punishment. Jamar Purnell was the leader of a large methamphetamine, fentanyl, and cocaine trafficking organization in the Madison area that moved substantial quantities of drugs. Purnell, a felon, possessed a loaded firearm at his drug house. He was on state supervision for a drug trafficking conviction at the time he involved himself in this conduct. He has a lengthy prior history of drug trafficking and has been to prison multiple times in the past. His incredibly high offense level reflects the types and quantities of drugs he was involved with, as well as his role and involvement with a firearm.

Purnell needs to be confined to protect the public from his conduct based on the large quantities of methamphetamine, fentanyl, and cocaine, and his involvement with a loaded firearm. Rehabilitation is a longer-term goal as well.  Purnell must take stock of the issues that led him here and seek out and utilize resources, both while in prison and later while on supervised release, to ensure that he leads a productive and law-abiding life when released. By imposing a significant prison term here, this Court will send a needed message to address the seriousness of these offenses, promote respect for the law, provide just punishment, protect the public from further crimes, and deter Purnell from future criminal conduct.

CONCLUSION

Based on the serious nature of the Purnell's current offenses, the circumstances under which he committed them, his background, and after full consideration of the relevant § 3553(a) factors, the government asks this Court to impose a total sentence of 20 years in prison, a recommendation which is below his advisory guideline imprisonment range, which would send a strong message to Purnell that his dangerous behavior will not be tolerated.

Dated this 19th day of May 2026.

Respectfully submitted,

CHADWICK M. ELGERSMA
United States Attorney

By:        /s/
STEVEN P. ANDERSON
Assistant United States Attorney

8