IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

KEEAN V. MOORE,

Case No. 25-cr-63-wmc

Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

INTRODUCTION

The government submits this memorandum to aid the Court in the sentencing of

defendant, Keean V. Moore, which is currently scheduled for May 22, 2026. As detailed

below, Moore was one of the primary distributors for an extensive drug trafficking

organization led by Jamar Purnell. Moore moved a significant amount of drugs into the

community: approximately 4,624 grams of methamphetamine, 59 grams of cocaine base,

167 grams of cocaine, and 447 grams of fentanyl. For the reasons stated below, the

government asks this Court to impose a sentence between 13 and 15 years in prison.

This recommendation is well below Moore's advisory guideline imprisonment range.

FACTS[1]

In early 2024, law enforcement officers began investigating members of a drug

trafficking organization (Purnell DTO) operating in Dane County and led locally by

---

[1] The facts underlying the offense in this case are accurately detailed in the Revised Presentence
Investigation Report ("PSR") (Dkt. 383).

Jamar Purnell. (PSR ¶¶ 40-44.) The investigation involved many controlled buys of significant quantities of narcotics by members of the Purnell DTO, Title III wiretaps on phones of members of the Purnell DTO, including Moore's phone, surveillance (physical and GPS), interviews, and warranted searches of residences and vehicles.

Moore played a key role in the organization, as a primary distributor for the Purnell DTO. (PSR ¶ 28.) He and Jimmie Leuaxay assumed that role after law enforcement arrested Purnell's son in July 2024. (*Id.*) Moore and Leuaxay oversaw a "duty" system for customers, responding to dozens of calls per day from drug customers looking to buy various substances. (PSR ¶¶ 28-29, 96.)

As charged in the Second Superseding Indictment, Moore participated in controlled buys on July 31 and August 9, 2024, and January 3, 2025. On July 31 (Count 15), the confidential informant coordinated the purchase of one pound of methamphetamine with Purnell, and Moore completed the sale, providing 549.4 grams of methamphetamine to the informant. (PSR ¶¶ 68-71.)

On August 8, the confidential informant contacted Moore to coordinate the purchase of a pound of methamphetamine for the next day, August 9 (Count 16). (PSR ¶ 72.) Moore told the informant to deal with his son, Keean Moore Jr., and provided his son's phone number. (PSR ¶ 73.) On August 9, Moore Jr. stopped at a hotel Moore had been observed at before traveling to the buy location and providing the informant 450 grams of methamphetamine. (PSR ¶¶ 74-77.)

On January 2, 2025, the confidential informant contacted Purnell to coordinate the purchase of one pound of methamphetamine. (PSR ¶ 92.) Purnell sent the informant an address via Singal the next day, January 3 (Count 19). (PSR ¶ 93.) Before the buy, surveillance officers saw Purnell meet with Moore at Moore's residence before both left and Moore then traveled to the buy location. (PSR ¶ 94.) At the buy location, Moore provided the informant 454.2 grams of methamphetamine. (PSR ¶ 95.)

Officer also searched Moore's residence on March 18, 2025 (Counts 24 and 25). (PSR ¶¶ 135-39.) Inside a bedroom closet, officers found 389 grams of methamphetamine, 59 grams of cocaine base, 167.3 grams of cocaine, a scale, $2,000, and 221 rounds of ammunition. (PSR ¶ 138.) Moore was prohibited from possessing ammunition because of his prior felony convictions. (PSR ¶ 139.)

On top of the drugs seized during the controlled buys and from his residence, based on intercepted wiretap communications, Moore is responsible for distributing an additional 2,856 grams of methamphetamine and 447 grams of fentanyl. (PSR ¶ 154.) Between just January 29 and March 5, 2025 (35 days), the intercepted wiretap communications show Moore conducted over 50 transactions. (PSR ¶ 157.)

Moore pleaded guilty to Count 1 of the Second Superseding Indictment, which charged him with conspiring to distribute or possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and a mixture or substance containing a detectable amount of fentanyl. (PSR ¶¶ 7-8.)

GUIDELINES

The PSR determined Moore had a total offense level of 38 and a criminal history category of IV. (PSR ¶¶ 172, 198.) The resulting guideline imprisonment range is 324 to 405 months in prison. (PSR ¶ 254.) Moore faces a 10-year mandatory minimum requirement on Count 1 due to the drug quantity involved. (PSR ¶ 253.) The government agrees this is the correct guideline analysis.

ARGUMENT

Given the nature of Moore's current offense, the circumstances under which he committed it, and his background, the government respectfully requests that this Court impose a sentence between 13 and 15 years in prison. This recommendation is well below Moore's advisory guideline imprisonment range.

A.    Nature, Circumstances, and Seriousness of the Offense

Moore was a primary distributor for a large drug trafficking organization that moved incredible quantities of methamphetamine, heroin/fentanyl, and cocaine. His relevant conduct *conservatively* includes over 4.5 kilograms of methamphetamine, 59 grams of cocaine base, 167 grams of cocaine, and 447 grams of fentanyl. It goes without saying that these are highly addictive and potentially lethal drugs, and if the seized drugs had been distributed, they would have caused great harm to the community.

4

Unfortunately, huge quantities of drugs were distributed into the community over time because of the Purnell DTO and Moore's role in it.

While the type and amount of trafficked drugs in this case alone warrant a significant sentence, Moore's possession of ammunition as a prohibited person and his choice to involve his son in the organization make his actions even more serious. As for the ammunition, this Court knows it's especially dangerous when firearms are combined with drug trafficking. As for involving his son, Moore knew the consequences of drug trafficking, yet he chose to make participation in the Purnell DTO a family affair. At 49, Moore should be aging out of crime, not pulling his son into a sophisticated drug trafficking organization. The nature, circumstances, and seriousness of Moore's actions warrant a substantial sentence.

B.    The History and Characteristics of the Defendant

Moore's history and characteristics also justify a weighty sentence. His lengthy criminal history stretches back to 1994, when Moore was just 17 and became a felon. (PSR ¶ 179.) Moore has 19 convictions, six of which are felonies and many of which involve violence.

In 1994, Moore hit a 14-year-old girl in the chest with a metal pipe. (PSR ¶ 180.) In 1996, he slapped another female in the face. (PSR ¶ 181.) In 1998, Moore hit two victims with baseball bats. (PSR ¶ 183.) In 1999, Moore fractured his two-year-old son's arm in a fit of anger. (PSR ¶ 184.) In 2001, he grabbed his then-girlfriend's hair, slammed her onto the ground multiple times, and strangled her. (PSR ¶ 185.) In 2006,

Moore slapped, punched, and strangled a different girlfriend. (PSR ¶ 187.) In 2007, he and a group of others jumped two people, kicking, punching, and stabbing them in the back and shoulder area. (PSR ¶ 188.) In 2009, Moore hit a man in the head with a belt buckle. (PSR ¶ 189.) In 2013, he again domestically abused a partner by grabbing her hair, punching her, scratching her in the chest with a key, strangling her, and biting one of her fingers. (PSR ¶ 190.) That same year, Moore also punched his 16-year-old stepchild in the face to "toughen" him up. (PSR ¶ 191.) In 2019, he again domestically abused a partner by punching her, strangling her, and hitting her in the head with a wooden chair. (PSR ¶ 196.) In 2021, Moore retrieved a firearm from his car, chambered a round of ammunition, and hit a person in the face. (PSR ¶ 197.) The above shows that whether domestic violence, child abuse, or other fights, Moore solves problems with weapons or his fists. Moore's long history of violence makes him a significant danger to the community.

Over the years, Moore received many opportunities to reform through probation, but he largely squandered those opportunities by violating the terms of his probation, which resulted in revocation. (PSR ¶¶ 179, 183, 187, 190.) Moore has also served time in jail and prison, including for drug-related convictions. (*See, e.g.,* PSR ¶¶ 179, 182, 187, 188.) In short, Moore knows the consequences of criminal behavior but chooses to continue engaging in it. To date, nothing has deterred him from returning to crime once

back in the community. Far from it, Moore's most recent drug trafficking in this case shows his conduct is escalating.

      C.      <u>The Need for a Sentence that Promoted Respect for the Law and Provides Just Punishment.</u>

In this case, the primary goals of sentencing are incapacitation and punishment. The above shows that despite his increasing age and many opportunities for change, Moore simply refuses to stop violating the law. Moore's aggravated criminal history and choice to make money by selling large quantities of methamphetamine, fentanyl, and cocaine places the community at continued risk of harm from him. Rehabilitation-wise, a substantial sentence in this case will give Moore time to reflect on the choices that led him here and to seek out and use resources, both while in prison and later while on supervised release, to ensure he leads a productive and law-abiding life when released. By imposing a significant prison term here, this Court will send a needed message to address the seriousness of these offenses, promote respect for the law, provide just punishment, protect the public from further crimes, and deter Moore from future criminal conduct.

<u>CONCLUSION</u>

Based on the serious nature of Moore's current offense, the circumstances under which he committed it, his background, and after full consideration of the relevant section 3553(a) factors, the government asks this Court to impose a sentence between 13 and 15 years in prison, a recommendation which is well below his advisory guideline

7

imprisonment range, and which would send a strong message to Moore that his

dangerous behavior will not be tolerated.

Dated this 20th day of May 2026.

Respectfully submitted,

CHADWICK M. ELGERSMA
United States Attorney

By: /s/_____
STEVEN P. ANDERSON
Assistant United States Attorney