**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.

                                    Case No. 25-CR-63-WMC

KEEAN MOORE,

                Defendant.

---

### DEFENDANT'S SENTENCING MEMORANDUM

---

Keean Moore will appear before the Court for Sentencing on May 22, 2026. His advisory guideline range will be somewhere between 262-327 months and 324-405 months, depending on whether the Court applies a disputed two-level enhancement under USSG §2D1.1(b)(12). Further, if the Court declines to calculate the methamphetamine quantity based on "actual" methamphetamine purity and instead applies the mixture calculation, the advisory range drops to 210-262 months. Regardless of the Court's ultimate decision, none of the advisory sentencing ranges represent an appropriate sentence in this case.

These ranges fail to adequately balance the sentencing factors codified at 18 U.S.C. § 3553(a), and are much longer than is necessary to achieve justice in this case. Instead, Keean asks that the Court sentence him to 10 years, the minimum term of imprisonment required, and a period long enough to address the relevant sentencing factors while appropriately accounting for his background, personal history, and circumstances that helped shape the conduct before the Court.

### I.    Offense Conduct

Jamar Purnell and Yasir Stackhouse spearheaded a drug trafficking organization with distributors located throughout the Madison area. They received their supply from Arizona and Chicago. Keean was a primary distributor for Purnell and Stackhouse, along with Jimmie Leuaxay. Together they were responsible for providing product to the many sub-distributors connected to the drug trafficking organization. Given his role, Keean is properly classified as a manager or supervisor and should be viewed as more culpable than the many sub-distributors, but less culpable than Purnell and Stackhouse, who sourced the supply, negotiated prices and delivery terms, and oversaw the execution of the operation. Regardless, serving as a primary distributor within a drug trafficking organization is significant criminal behavior that warrants a substantial sentence. At the same time, the Court must also determine what sentence is sufficient, but not greater than necessary to accomplish the purposes of sentencing. The ten-year mandatory minimum already represents a significant period of incarceration and a severe consequence for Keean's conduct.

### II.    History

From a young age, Keean was exposed to conflict, violence, and survival-based decision-making during critical developmental years. His home life was turbulent due to his father's physical abuse of his mother and older brothers. When Keean was ten, his parents separated and, following that separation his father was largely absent from his life and Keean saw him only sporadically before reaching adulthood.

Keean left home by age fifteen because he believed his departure would lessen the burden on his mother as she tried to raise his younger siblings alone. Living on his own as a teen without meaningful structure and support, he quickly became immersed in street life. His neighborhood

was heavily impacted by gang and drug activity, and Keean was exposed to that environment from a very young age, including through his older brother, Lawrence, whom he admired and looked up to a as a child. A lifestyle of criminal activity, hustling, and gang involvement was normalized, and even aspirational. Growing up in that environment made it easy to idolize the wrong values, and he became involved with the Gangster Disciples during his teenage years and early adulthood. Around age twenty-four, he moved to Madison with his son, his then girlfriend, and her children in an effort to both to distance himself from gang activity and create a safer, more stable environment for his family.

In 2016, Keean separated from a different long-time girlfriend with whom he shares two minor daughters. In the years that followed, he experienced significant instability and financial hardship. He struggled with housing instability, and often spent money he could not afford on hotel rooms simply so he could have a place to spend time with his kids and be present in their lives.

He was working as a preparation cook and later as a chef the Overture Center through a catering company contracted by the venue. Keean still struggled to become financially stable and keep up with living expenses for himself and what he contributed for his children. The stress associated with financial stability, inconsistent housing, and the pressure he felt as a father contributed to periods of substance use involving cocaine and alcohol as unhealthy coping mechanisms. Importantly, even while dealing with those challenges, Keean continued to maintain employment and work consistently, something that is noteworthy given the instability and personal struggles he was experiencing.

In 2020, with the assistance of Porchlight, things began to look up for Keean and he obtained an apartment. However, that progress was disrupted when he was laid off in 2024.

Being again faced with financial instability, the possibility of losing his housing and mounting pressure to provide for his children created the perfect storm for him to make the deeply misguided decision to become involved in drug distribution.

Keean is now the father of nine children, and much of his decision-making (however flawed) has been driven by a persistent desire to be financially present and supportive in their lives. That does not excuse his conduct, nor does it minimize the seriousness of the offense before the Court. But it is important context. His involvement in drug dealing did not arise from greed, status, or violence, but from a combination of financial desperation, instability, and a distorted belief that he needed to find a way to provide for his family by whatever means necessary when legitimate opportunities once again became uncertain.

III.    The Court Should Not Apply a Two-Level Enhancement Under USSG §2D1.1(b)(12).

There is no dispute that controlled substances were found in Keean's apartment. However, the enhancement is intended to apply where drug trafficking constitutes a primary or significant purpose of maintaining the property, not where an individual resides in a home in which drugs are also present. This residence was Keean's one and only home. It was a genuine living space used for ordinary residential purposes. Law enforcement encountered a residence filled with cluttered and messy personal belongings consistent with someone actually living there on a full-time basis. The unit contained substantial amounts of everyday personal property, clothing and household items. While there were transactions that took place in his apartment, the evidence suggests Keean more often than not arranged transactions at buy locations.

## IV.    Keean's Criminal History Category Overstates His True Risk

Keean's total criminal history score is seven. However, only two of those points were accumulated within the last ten years and both related to forfeiture-level offenses. His only countable felony conviction dates back to 2007, though the resulting revocation and period of incarceration  extended into 2011, thereby rendering it countable under the Guidelines.

Keean's criminal history is not insignificant, and he has previously served prison sentences. However, the nature and timing of those prior periods of incarceration are important context for the Court's consideration. His prior prison sentences occurred in 1998, 2008, and 2010, meaning the most recent was approximately sixteen years ago. None of those terms involved lengthy incarceration; the longest period he served was two years. His priors do not reflect a history of drug distribution, and Keean has not spent the majority of his adult life cycling in and out of prison, and despite his struggles, he has demonstrated periods of stability throughout adulthood.

## V.    The Advisory Guidelines are Artificially Inflated

The Guidelines' treatment of pure methamphetamine, inflates the offense level in a manner that does not accurately reflect the realities of modern methamphetamine trafficking. Today, highly pure methamphetamine has become commonplace at nearly every level of distribution. Modern methamphetamine is routinely distributed at high purity regardless of whether the defendant occupies a leadership role or has any meaningful proximity to the source of production. The use of the "actual methamphetamine" calculation dramatically escalates

Keean's guideline range and the nature of his conduct. He was not operating a sophisticated international trafficking organization, directing violence, or accumulating extraordinary wealth.

## VI.    CONCLUSION.

A sentence at the mandatory minimum appropriately recognizes the seriousness of the offense, provides substantial punishment and deterrence, but allows the opportunity for rehabilitation and eventual reintegration into the community for a forty-nine-year-old man whose decisions did not occur in a vacuum. Much of Keean's adult life has been shaped by instability, financial insecurity, and a lifelong exposure to environments where survival-based thinking and short-term decision making were normalized from an early age. None of that excuses his conduct. Rather it helps explain how someone who has demonstrated periods of stability and lawful conduct regressed into criminal behavior. Extending the sentence beyond the mandatory minimum in this case would add comparatively little in terms of public safety or deterrence while substantially increasing the punitive impact of the sentence and diminishing any meaningful opportunity for rehabilitation and reintegration.

Dated at Madison, Wisconsin, May 20, 2026

<div style="margin-left:40%">

Respectfully submitted,
KEEAN MOORE, Defendant
Andrea Schoenherr
Nicholson Goetz & Otis, S.C.
22 East Mifflin Street, Suite 300
Madison, WI 53703
andrea@nglawyers.com

</div>

6