IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,                                    Case No. 25-CR-63-6

v.

JIMMIE LEUAXAY,

Defendant.

---

SENTENCING MEMORANDUM

---

Defendant Jimmie Leuaxay, by and through his counsel, Gregory Dutch, respectfully submits this Sentencing Memorandum in support of a variance from the United States Sentencing Guidelines. For the reasons set forth below, Mr. Leuaxay requests that this Court impose a sentence of 15 years, 10 for the drugs, 5 for the gun, followed by 5 years of supervision, which is sufficient, but not greater than necessary, to comply with the statutory directives of 18 U.S.C. § 3553(a).

. The Nature and Scope of the Conspiracy

The instant offense arises out of a large-scale drug distribution organization originally founded and operated by co-defendants Jamar Purnell and Yasir Stackhouse. Mr. Purnell and Mr. Stackhouse served as the leaders and primary organizers of the enterprise, controlling the supply chains and managing the overall distribution network.

Mr. Leuaxay's Role in the Offense

While Mr. Leuaxay acknowledges his involvement in this conspiracy, his role was strictly

1

operational and subordinate to the organizational leadership. Alongside co-defendant Keenan Moore,(sentenced to 134 months),  Mr. Leuaxay was tasked with managing the day-to-day operations of the "drug phone line." In this capacity, Mr. Leuaxay acted as a dispatcher and courier—receiving orders, selling drugs directly to users, and collecting illicit proceeds, which were subsequently turned over to the leaders of the organization.

The Firearms .

During a search of Mr. Leuaxay's residence, law enforcement officers recovered seventeen (17) firearms. In his post-arrest statements to law enforcement, Mr. Leuaxay was candid, admitting that he possessed these weapons simply because he "liked guns." Crucially, the government's investigation yielded no evidence indicating that Mr. Leuaxay ever brandished, discharged, or otherwise actively used any firearm in connection with his duties delivering drugs or collecting money for the conspiracy. The firearms remained at his residence and were entirely distinct from his operational role on the streets managing the phone line.

AN APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS WARRANTS A MITIGATED SENTENCE/JOINT RECOMMENDATION CONSIDERATION

In determining the appropriate sentence, this Court must look to the factors enumerated in 18 U.S.C. § 3553(a) to ensure the penalty achieves the goals of justice without being overly punitive.

A. The Nature and Circumstances of the Offense (§ 3553(a)(1))

While the scale of the drug organization is undeniably serious, the Court must distinguish between the architects of the scheme and those who executed orders. Mr. Leuaxay was not a leader, he was a manager. He did not source the narcotics, nor did he recruit others into the fold.

2

He was an employee of the phone line, filling a role that, while criminal, lacked managerial culpability.

Furthermore, regarding the 17 firearms found at his home, the defense stresses that their possession was passive. Mr. Leuaxay's candid admission to police highlights a personal hobby and fascination with firearms rather than a desire to utilize them as tools of intimidation or violence in furtherance of drug trafficking. The complete absence of evidence showing firearm use during drug deliveries demonstrates that Mr. Leuaxay did not pose an active, violent threat to the community during the conspiracy.

B. The History and Characteristics of the Defendant (§ 3553(a)(1))

When Mr. Leuaxay was 18 years old, he was involved in a highly serious incident involving a large group of approximately twenty individuals who chased down several targets. Tragically, this event culminated in a homicide. The principal perpetrator of that shooting was subsequently sentenced to life in prison. While the gravity of that event cannot be minimized, Mr. Leuaxay's role must be strictly distinguished from the violent actors involved: investigation determined that Mr. Leuaxay did not possess or carry a firearm at the scene of the encounter. Although one individual in that case speculated that Mr. Leuaxay might have handled a firearm at some point prior to the shooting, it was established that he was unarmed during the actual incident and played no role in the loss of life.  This offense occurred a decade and a half ago, at the threshold of legal adulthood, when Mr. Leuaxay was highly susceptible to peer pressure and the chaotic dynamics of a large group.

Mr. Leuaxay's only other criminal conviction occurred nearly a decade ago, when he was 24 years old, for possession of a firearm. This conviction reflects his long-standing, passive

3

interest in firearms—an ongoing hobby that he now recognizes, given his status, carries severe federal consequences. Crucially, this prior offense did not involve injuries, discharge of a weapon, or operational violence.

Evaluation of Criminal History Under § 3553(a)

Mr. Leuaxay is not a career criminal or a driver of violent crime. Between the ages of 24 and 33, he maintained a minimal criminal footprint, demonstrating that he is fully capable of living a law-abiding life when removed from negative peer influences. His past behavior shows a pattern of proximity to firearms and poor choices in associations, but it does not show a pattern of physical violence, or organizational leadership. When viewed through the lens of 18 U.S.C. § 3553(a), his criminal history does not justify a sentence above the statutory floors, and further reinforces that the joint 15-year recommendation is more than adequate to protect the public and deter future misconduct.

Family History

Defendant is 33. He comes from a divorced family, but is tight with his brothers and mother. He is a first generation, his parents were born in Laos and fled the worn torn country. His best friend was his Uncle John, who died in 2025 of a drug overdose. Defendant has a relationship with his high school sweetheart, Elesia Jones, and has one biological child with her.

First-Generation American Heritage and Family History

Mr. Leuaxay is a first-generation American. His parents were born in Laos and were forced to flee their war-torn homeland, surviving immense hardship before eventually immigrating to the United States to build a life from the ground up. Growing up in an immigrant household inherently brought unique socio-economic and cultural challenges.

Although his parents eventually divorced, Mr. Leuaxay maintained deep, stabilizing connections within his immediate family. He remains exceptionally close with his mother and his brothers, who continue to provide a tight-knit and unwavering emotional support network. In 2025, Mr. Leuaxay suffered a devastating personal tragedy when his closest confidant and best friend, his Uncle John, passed away from a drug overdose. This loss deeply impacted Mr. Leuaxay, exposing him firsthand to the lethal reality and destructive wake of substance abuse.

While this tragedy does not excuse his operational role in a drug phone line, it provides critical context. Mr. Leuaxay has felt the acute pain that narcotics inflict on families, and his subsequent incarceration and reflection have solidified his desire to completely sever ties with the drug trade.

Mr. Leuaxay's primary regret regarding his current legal situation is the prolonged separation from his partner and the reality that he will miss critical formative years of his child's life. However, Ms. Jones and his child also represent his most powerful incentive for rehabilitation. Upon his eventual release, he has a concrete, loving family unit waiting to receive him and keep him ground

Mental Health/Substance Abuse.

Mr. Leuaxay has anxiety and takes medication.  The defendant has used many illegal substances, but opiates are his favorite.  He received methadone.  Mr. Leuaxay struggles with a diagnosed anxiety disorder. This condition has historically manifested as an overwhelming, debilitating impediment to his daily functioning. While he has been prescribed and takes medication to manage his symptoms, his underlying anxiety has historically been a significant driver of his poor decision-making, as he frequently sought ways to self-medicate the persistent

5

psychological distress he experienced.

Severe Opioid Dependency and Treatment History

Like far too many individuals, Mr. Leuaxay developed a severe substance abuse disorder involving multiple illegal substances, with opiates ultimately becoming his drug of choice. This dependency quickly evolved from a coping mechanism for his anxiety into a powerful, compulsive addiction that clouded his judgment and heavily influenced his associations. To his credit, Mr. Leuaxay has actively engaged in medical efforts to combat his addiction and regain control of his life: Methadone Maintenance: He previously participated in a methadone maintenance program, seeking a medically supervised avenue to manage withdrawal and cravings.

Mr. Leuaxay is currently utilizing Sublocade (an extended-release buprenorphine injection) to maintain sobriety. His adherence to this advanced medication-assisted treatment (MAT) demonstrates a serious, ongoing commitment to biological recovery and stabilization.

EDUCATION AND VOCATIONAL TRAINING (§ 3553(a)(1))

An evaluation of Mr. Leuaxay's background reveals a strong vocational aptitude and a clear desire for self-improvement, demonstrating that he possesses the foundational skills necessary to maintain productive, lawful employment upon his release.

. Academic Background and GED Aspirations

Mr. Leuaxay did not complete his formal high school education. However, his lack of a diploma does not reflect a lack of ambition. He has expressed a strong, proactive desire to obtain his General Educational Development (GED) credential. A 15-year sentence will provide Mr. Leuaxay with a structured environment to finally achieve this academic milestone. To that end,

the defense respectfully requests that the Court recommend Mr. Leuaxay's placement in the Bureau of Prisons' literacy and GED programming so that he may utilize his time in custody to solidify his academic credentials.

Vocational Certifications and Work Capacity

Despite his interrupted formal schooling, Mr. Leuaxay has consistently demonstrated a practical work ethic and a capacity to learn specialized trades:

Mr. Leuaxay successfully trained for and obtained his CDL. Maintaining a commercial license requires discipline, regulatory compliance, and a strict adherence to safety protocols—traits that speak to his capability to operate successfully within structured environments.

Masonry Certification: In addition to his commercial driving credentials, Mr. Leuaxay completed vocational training and received a formal certificate in masonry.

Rehabilitation and Future Employability

Mr. Leuaxay's possession of both a CDL and a masonry certification proves that he is highly employable in sectors that are consistently in high demand. He is not someone who must return to illicit markets to survive; he has the literal tools and trade skills to earn a legitimate, substantial living. When coupled with the attainment of his GED during his incarceration, Mr. Leuaxay will be fully equipped to immediately enter the workforce as a skilled laborer upon release. This significantly lowers his risk of recidivism and ensures he can financially support his partner and child through honest, hard work.

Sentencing Considerations Under § 3553(a)

Mr. Leuaxay's addiction and mental health challenges directly intersect with his offense

conduct, providing critical context for his involvement with a drug distribution network. The defense maintains that a lengthier sentence than the agreed-upon, joint recommendation negotiated by the parties of 15 year term provides an expansive window for rehabilitation. The defense respectfully requests that the Court include a formal recommendation to the Bureau of Prisons (BOP) that Mr. Leuaxay be allowed to continue his medication-assisted treatment for opioid use disorder and receive comprehensive mental health counseling for his anxiety while incarcerated.

The Need to Avoid Unwarranted Sentence Disparities (§ 3553(a)(6))

Finally, this sentence would avoid unwarranted sentence disparities, Mr. Leuaxay's sentence should reflect his lower tier of culpability relative to the organization's founders, Jamar Purnell and Yasir Stackhouse. A sentence significantly below what the leaders receive is necessary to maintain parity and fairness under the law.

CONCLUSION

For the foregoing reasons, Jimmie Leuaxay respectfully requests that this Court take into account his role in the offense, his honesty with law enforcement regarding his passive possession of firearms, and the lack of any operational gun violence. Accordingly, the defense requests a sentence of 180 months, as set for in the plea letter..

8

Respectfully Submitted,

        /s/

GREGORY N. DUTCH
Attorney for LEUAXAY

## CERTIFICATE OF SERVICE

I hereby certify that on May 26th, 2026, I electronically filed the foregoing with the Clerk of Court for the United States District Court of Wisconsin, Western Division by using the CM/, ECF system. Participation in the case who are registered CM/ECF users will be served by the CM/ECF system. I further certify that Leuaxay in this case is not a CM/ECF user. I have mailed the foregoing document by First Class Mail, postage prepared within 3 calendar days to the non-CM/ ECF participant.

/s/Gregory N. Dutch

Gregory N. Dutch