IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v.

Case No. 25-cr-63-wmc

JIMMIE A. LEUAXAY,

Defendant.

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

INTRODUCTION

The government submits this memorandum to aid the Court in the sentencing of

defendant, Jimmie A. Leuaxay, which is currently scheduled for May 28, 2026. As

detailed below, Leuaxay was one of the primary distributors for an extensive drug

trafficking organization led by Jamar Purnell.[1] Leuaxay moved significant amounts of

drugs into the community: approximately 9,149 grams of methamphetamine, 1,258

grams of fentanyl, and 189 grams of cocaine,[2] and was also found illegally possessing

sixteen firearms. For the reasons stated below, the government asks this Court to

impose a total sentence of 15 years in prison. This recommendation is well below

Leuaxay's advisory guideline imprisonment range.

---

[1] Jamar Purnell was sentenced to a total of 20 years on May 21, 2026, after pleading guilty to Counts 1 and 7 of the Second Superseding Indictment in this same case.
[2] This amount was calculated solely from seized drugs and wiretap intercepts and likely represents a conservative total.

FACTS[3]

In early 2024, law enforcement officers began investigating members of a drug trafficking organization (Purnell DTO) operating in Dane County led locally by Jamar Purnell. (PSR ¶¶ 42-45.) The investigation involved many controlled buys of significant quantities of narcotics from members of the Purnell DTO, Title III wiretaps on phones of members of the Purnell DTO, including Leuaxay's phone, surveillance (physical and GPS), interviews, and warranted searches of residences and vehicles. (PSR ¶ 45.)

Leuaxay played a key role in the organization, as a primary distributor for the Purnell DTO. (PSR ¶ 30.) He and Keean Moore assumed that role after law enforcement arrested Purnell's son in July 2024. (*Id.*) Leuaxay and Moore oversaw a "duty" system for customers, responding to dozens of calls per day from drug customers looking to buy various substances. (PSR ¶¶ 29-30, 97.) Based on intercepted communications while the wiretap was active, Leuaxay coordinated approximately 250 drug sales. (PSR ¶ 97.)

As charged in the Second Superseding Indictment, Leuaxay participated in controlled buys on September 12 and October 15, 2024. (PSR ¶ 2.) On September 11, 2024, the confidential informant arranged the purchase of one pound of methamphetamine from Purnell, who said he would send "nephew" the next day. (PSR ¶ 83.) On September 12 (Count 17), Leuaxay met with and distributed 446 grams of methamphetamine to the informant. (PSR ¶¶ 84-86.)

---

[3] The facts underlying the offense in this case are accurately detailed in the Revised Presentence Investigation Report ("PSR") (Dkt. 390).

On October 15, 2024 (Count 18), Leuaxay contacted the confidential informant and advised, "just got em in," after having been out of product for the past few days. (PSR ¶¶ 87-89.) On that day, Leuaxay met with and distributed 447 grams of methamphetamine to the informant. (PSR ¶ 90.)

On February 6, 2025, intercepted communications revealed that Noah Hodges ordered 8 ounces of methamphetamine and 15 grams of heroin from Leuaxay.[4] (PSR ¶ 113.) Officers observed Hodges meeting with Leuaxay in a parking lot in Madison. (*Id.*) Officers made contact with Hodges and found 221 grams of methamphetamine and 6 grams of heroin on his person and an additional 141 grams of methamphetamine and 7 grams of heroin in his vehicle. ((PSR ¶¶ 113-14.)

Officer searched Leuaxay's residence on March 18, 2025 (Counts 21-23). (PSR ¶ 135.) Inside, they found seventeen firearms (many loaded and multiple having been previously reported stolen), eight additional magazines (many loaded), 189 grams of cocaine, a digital scale with a white powdery substance on it, $26,225 in cash, and body armor. (*Id.*) Leuaxay was legally prohibited from possessing firearms and ammunition based on multiple prior felony convictions. (PSR ¶ 137.) In an interview following his arrest, Leuaxay claimed ownership of the firearms seized except for two registered to his significant other. (*Id.*) He said he wished he was not a felon because he loved

---

[4] Hodges was indicted in Western District of Wisconsin Case No. 25-cr-87-wmc.

firearms and admitted to shooting some of the firearms at an outdoor range in Columbia County. (*Id.*)

In addition to the drugs seized during the controlled buys and from his residence, based on intercepted wiretap communications, Leuaxay is responsible for distributing an additional 8,039 grams of methamphetamine and 1,252 grams of fentanyl. (PSR ¶ 156.) Between just January 17 and March 15, 2025, the intercepted wiretap communications show Leuaxay conducted over 250 transactions. (PSR ¶ 155.)

Leuaxay pleaded guilty to Counts 1 and 23 of the Second Superseding Indictment, which charged him with conspiring to distribute or possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and a mixture or substance containing a detectable amount of fentanyl and possession of firearms in furtherance of a drug trafficking crime. (PSR ¶¶ 7-8.)

GUIDELINES

The PSR determined that Leuaxay has a total offense level of 38 and a criminal history category of III. (PSR ¶¶ 172, 181.) The resulting guideline imprisonment range is 292 to 365 months. (PSR ¶ 218.) Leuaxay faces a 10-year mandatory minimum requirement on Count 1 due to the drug quantity involved. (PSR ¶ 217.) He also faces a

4

5-year mandatory minimum sentence on Count 23 that must be imposed consecutively. (*Id.*) The government agrees this is the correct guideline analysis.

ARGUMENT

Given the nature of Leuaxay's current offenses, the circumstances under which he committed them, and his background, the government respectfully requests that this Court impose a total sentence of 15 years in prison. This recommendation is well below Leuaxay's advisory guideline imprisonment range.

A.    Nature, Circumstances, and Seriousness of the Offense

Leuaxay was a primary distributor for a large drug trafficking organization that moved incredible quantities of methamphetamine, heroin/fentanyl, and cocaine. His relevant conduct *conservatively* includes over 9 kilograms of methamphetamine, 1,258 grams of fentanyl, and 189 grams of cocaine. Leuaxay was profiting so much from drug trafficking that he was able to spend approximately $100,000 on sports betting in the six months prior to his arrest. This Court is aware that these drugs are highly addictive and potentially lethal, and if the seized drugs had been distributed, they would have caused great harm to the community. Unfortunately, due to the Purnell DTO and Leuaxay's role in it, huge quantities of drugs were distributed into the community over time.

While the types and amounts of trafficked drugs in this case alone warrant a significant sentence, Leuaxay's possession of sixteen firearms as a prohibited person make his actions even more serious. This Court knows it's especially dangerous when

firearms are combined with drug trafficking. The nature, circumstances, and seriousness of Leuaxay's actions warrant a substantial sentence.

      B.      <u>The History and Characteristics of the Defendant</u>

Leuaxay's history and characteristics also justify a weighty sentence. While he does not have a significant number of prior convictions – two – they are both noteworthy, serious, and involve firearms.

In 2013, Leuaxay was convicted of 2nd Degree Recklessly Endangering Safety. (PSR ¶ 179.) In that case, police responded to a report of gunshots and found a deceased individual in a crashed vehicle with gunshot wounds to the head and torso. (*Id.*) The investigation found that a gang of males, including the defendant, were involved with the shooting. (*Id.*) Several firearms were possessed by the gang, including one handgun that belonged to either Leuaxay or his brother. (*Id.*) For his role, Leuaxay was sentenced to 2 ½ years in state prison. (*Id.*) His supervision was revoked in 2018. (*Id.*)

In 2019, Leuaxay was convicted of Possess Firearm-Convicted of a Felony. (PSR ¶ 180.) In that case, while on felony supervision for his prior case, Leuaxay was found in possession of a loaded handgun. (Id.)

Both of these prior offenses involve firearms, which makes Leuaxay's possession of sixteen firearms, some stolen, additional loaded magazines, all while drug

6

trafficking, extremely concerning. His history with firearms makes him a significant danger to the community.

Leuaxay was sentenced to 30 months in prison for his 2nd Degree Recklessly Endangering conviction. That sentence, plus the supervision he was on at the time, did not deter him from returning to crime by illegally possessing a firearm. That additional conviction, and a return to state prison, did not deter him from engaging in the incredibly serious and dangerous conduct in the present case. And Leuaxay's drug trafficking and firearms possession in this case show his conduct is escalating.

Leuaxay was unemployed for the entirety of his involvement in the charged drug trafficking conspiracy, supporting the conclusion that he was distributing serious drugs to maintain his lifestyle. (PSR ¶ 207.)

C.    The Need for a Sentence that Promoted Respect for the Law and Provides Just Punishment.

In this case, the primary goals of sentencing are incapacitation and punishment. Leuaxay's large scale drug trafficking and illegal possession of sixteen firearms, combined with his firearms related criminal record, make him a serious danger to the community. Rehabilitation-wise, a substantial sentence in this case will give Leuaxay time to reflect on the choices that led him here and to seek out and use resources, both while in prison and later while on supervised release, to ensure he leads a productive and law-abiding life when released. By imposing a significant prison term here, this Court will send a needed message to address the seriousness of these offenses, promote

respect for the law, provide just punishment, protect the public from further crimes, and deter Leuaxay from future criminal conduct.

CONCLUSION

Based on the serious nature of Leuaxay's current offenses, the circumstances under which he committed them, his background, and after full consideration of the relevant section 3553(a) factors, the government asks this Court to impose a total sentence of 15 years in prison, a recommendation which is well below his advisory guideline imprisonment range, and which would send a strong message to Leuaxay that his dangerous behavior will not be tolerated.

Dated this 26th day of May 2026.

Respectfully submitted,

CHADWICK M. ELGERSMA
United States Attorney


By: /s/
STEVEN P. ANDERSON
Assistant United States Attorney